IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19-CV-_____ |
| ) | |
| CITY OF CHICAGO, DETECTIVE ) | |
| PALOMINO (Star No. 18473), ) | |
| and DETECTIVE RAINEY ) | |
| (Star No. 17689), ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Douglas Brown complains against Defendants City of Chicago, Detective Palomino (Star No. 18473), and Detective Rainey (Star No. 17689) as follows:

### Summary

1. In the evening on March 24, 2012, Randy Streeter was walking east on West 63rd Street, on the south side of Chicago, when he was hit by a gunshot.

2. In the evening on March 24, 2012, Douglas Brown was at home, at 66th and Laflin Streets in Chicago.

3. More than a year after the shooting, Detectives Palomino and Rainey focused on Douglas Brown (who the detectives asserted had ties to a gang), and coerced witnesses to identify Brown as having been involved in the shooting.

4. Brown was arrested in June 2014 and charged with multiple counts of murder, attempted murder, and aggravated discharge of a weapon based on the

information provided by and on the recommendation of Detectives Palomino and Rainey.

5. Brown was held in the Cook County jail from June 2014 until after he was tried and acquitted on November 30, 2018 by a jury.

## **Jurisdiction and Venue**

6. The Court possesses subject matter jurisdiction over the federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343(a), and supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391 because the acts and events giving rise to the complaint occurred in the Northern District of Illinois, Eastern Division and because, upon information and belief, the Defendants reside here.

## **Parties**

8. Plaintiff Douglas Brown is a citizen of the United States and, at all relevant times, was a resident of the City of Chicago, Illinois.

9. Defendant City of Chicago is and was, at all times mentioned herein, an Illinois municipal corporation organized and existing as such under the laws of the State of Illinois.

10. Defendant City of Chicago is liable under the doctrine of *respondeat superior* for all torts committed by its employees and/or agents, including the named individual defendants who, at all times mentioned herein, were employees of the City of Chicago and acting within the scope of their employment.

11. Defendant Palomino is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

12. At all times herein mentioned, Detective Palomino was acting under color of state law and within the scope of his employment for the City of Chicago. He is being sued in his individual capacity.

13. Defendant Rainey is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

14. At all times herein mentioned, Detective Rainey was acting under color of state law and within the scope of his employment for the City of Chicago. He is being sued in his individual capacity.

## Facts

15. In the evening on March 24, 2012, at approximately 9:30 p.m., Randy Streeter and a friend were walking east on West 63rd Street in Chicago.

16. Streeter passed South Damen Avenue and was proceeding toward Honore Street when a half-dozen gunshots were fired.

17. One of the gunshots struck Streeter, and he was taken to the hospital where he died as a result of his injuries.

18. Chicago Police believed the shooting was related to gangs.

19. Detectives Palomino and Rainey were assigned to investigate.

20. The investigation by Detectives Palomino and Rainey proceeded without success.

21. The Chicago Police, upon information and belief, did not recover physical evidence from the crime scene.

22. The Chicago Police never recovered the gun(s) that fired the shots at Streeter.

23. And, the initial canvas of the area by Chicago Police, upon information and belief, did not yield eyewitnesses who saw who fired the shots or video of the shooting.

24. The friend that accompanied Street, upon information and belief, did not see who fired the shots.

25. Detectives Palomino and Rainey believed the shooting involved rival gang members, but the investigation, however, did not yield any evidence pointing to anyone specific.

26. Wanting to close the case, create the appearance that the shooting had been solved, and increase both the Chicago Police Department's and their personal "clearance rates," Detectives Palomino and Rainey resorted to methods they knew yielded wrongful arrests and convictions in the past, including relying on jailhouse informants desperate to avoid charges to "pin" the crime on someone the police believe is gang-affiliated and should be in jail.

27. Approximately a year after the shooting, a jailhouse informant, arrested with a gun and drugs, offered to say anything the Chicago Police wanted to avoid being charged, and Detectives Palomino and Rainey used the informant to generate a "break" in the March 24, 2012 shooting investigation.

28. The informant, who Detectives Palomino and Rainey knew was unreliable and would say anything to avoid the gun and drug charges, was never charged (despite being arrested with a gun and drugs).

29. The Chicago Police Department released the informant without charges, and then arrested him two or three times more, each time pushing him to give them someone to arrest.

30. Eventually, the detectives were able to coerce the informant to falsely claim that four people were involved in the shooting, Douglas Brown, DeShawn McKinney, Devante Young, and Timothy Harvey.

31. The informant was not only untrustworthy, as Detectives Palomino and Rainey knew, but there was no way to corroborate the new information that the informant was conveniently providing years after the shooting.

32. Detectives Palomino and Rainey knew that the dubious information provided by the informant was insufficient to support probable cause, so they set out to create more "evidence."

33. Detectives Palomino and Rainey questioned Timothy Harvey, who was young and who the detectives learned had a low IQ and could be manipulated.

34. Timothy Harvey denied any involvement in the March 24, 2012 shooting and, initially, stated he lacked any information about the shooting.

35. Detectives Palomino and Rainey decided to arrest Timothy Harvey, remove him from the presence of his guardians and use threats and interrogation techniques to pressure Harvey into making a false identification.

36. After being coerced by Detectives Palomino and Rainey and told what to say, Harvey claimed that DeShawn McKinney fired the shots that hit Streeter, after Douglas Brown retrieved the gun and handed it to him.

37. Despite being a suspect and purportedly being involved in the shooting, according to the informant, Harvey was never charged.

38. Detectives Palomino and Rainey then sought to interview Douglas Brown on several occasions, and attempted to use interrogation techniques to coerce Brown into agreeing with the narrative that they created about the shooting.

39. Douglas Brown, however, was at home, with his mom and sister, a mile away from 63rd and Damen, at 66th and Laflin Streets in Chicago on March 24, 2012, and was not involved in the shooting.

40. Detectives Palomino and Rainey had Brown transferred to the Cook County Jail, without a legal basis, and then took Brown to the station at 111th Street in Chicago.

41. Detectives Palomino and Rainey took Brown from a cold interview room back and forth to a holding cell numerous times, while they were also holding DeShawn McKinney in the same group of holding cells.

42. After Detectives Palomino and Rainey were unable to pressure Brown into falsely confessing to something he did not do, Detectives Palomino and Rainey arrested and charged Brown with the shooting of Randy Streeter.

43. At the time they arrested Douglas Brown, Detectives Palomino and Rainey had no physical evidence connecting Brown to the shooting.

44. Detectives Palomino and Rainey were or should have been aware that at the time Brown was over a mile away from where the shooting occurred.

45. Detectives Palomino and Rainey deliberately did not obtain independent evidence to confirm the narrative that they created about Brown's involvement in the shooting because they believed was gang-affiliated and was guilty of something.

46. Instead, Detectives Palomino and Rainey pressured and manipulated Timothy Harvey to implicate Brown.

47. Detectives Palomino and Rainey, however, knew that the informant and Harvey had concocted conflicting stories under pressure from the detectives, and that the inconsistencies demonstrated that the statements were contrived.

48. Detectives Palomino and Rainey urged the Cook County State's Attorney to initiate criminal proceedings against Brown based on the false information they supplied.

49. Detectives Palomino and Rainey concealed the lack of reliability, verification, and inconsistencies in the information that they created, along with the exculpatory evidence.

50. Detectives Palomino and Rainey supplied misinformation to initiate the criminal proceedings against Brown on June 13, 2014 in the case captioned *People of the State of Illinois v. Douglas Brown*, 14 CR 12082701 for ten counts of murder, attempted murder, and aggravated discharge of a firearm.

51. Brown was and is actually innocent of all of these charges because on March 24, 2012, he was not in possession of a firearm, did not discharge the firearm, and did not shoot Streeter.

52. The Defendants knew that Brown was innocent of the charges during the course of their investigation, when they initiated the criminal proceeding against him, and during the entirety of that criminal proceeding.

53. The criminal proceedings were initiated based on fabricated reports and misinformation supplied by the Defendants during the course of their investigation.

54. Eight of the ten charges were dismissed against Brown, and a jury found Brown not guilty of the remaining charges on November 30, 2018.

55. Brown was released from the custody of the Cook County Jail on or about December 1, 2018.

56. By the time of his release from custody, Douglas Brown had been unlawfully detained for approximately four years.

**Count I**

**42 U.S.C. § 1983 – Illegal Pretrial Detention (*Manuel*)**
(Against Palomino and Rainey)

57. Each of the foregoing paragraphs are incorporated herein.

58. In the manner described above, Defendants seized and unlawfully detained Plaintiff without probable cause or any lawful justification, in violation of the Fourth Amendment to the U.S. Constitution.

59. The misconduct described herein was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

60. Plaintiff's detention of approximately four years was due to the Defendants' fabricated evidence in their police reports, criminal complaints and/or testimony rendered during the underlying criminal proceeding in the matter captioned *People of the State of Illinois v. Douglas Brown,* 14 CR 12082701.

61. As a result of this misconduct, Plaintiff was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

**WHEREFORE**, Plaintiff Douglas Brown demands judgment against Defendants Palomino and Rainey for compensatory damages, punitive damages, costs, reasonable attorneys' fees, and such other and additional relief deemed equitable and just under the circumstances.

## Count II

### 42 U.S.C. §1983 – Violation of Due Process (Fourteenth Amendment)
(Against Palomino and Rainey)

62. Each of the foregoing paragraphs are incorporated herein.

63. The Defendants, acting individually, jointly, and/or in conspiracy, deprived Plaintiff of his constitutional right to due process and fair trial.

64. In the manner described more fully above, the Defendants fabricated false inculpatory statements Plaintiff and from others, deliberately withheld and suppressed exculpatory evidence from the prosecutors and defense counsel, and

fabricated false reports and other evidence, thereby causing the wrongful prosecution of Plaintiff.

65. Absent this misconduct, the criminal prosecution could not and would not have been pursued.

66. The Defendants misconduct directly resulted in the unjust criminal prosecution and continuing wrongful incarceration of Plaintiff while he awaited trial in the Circuit Court of Cook County, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

67. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to the loss of his liberty, physical harm, severe emotional distress and anguish.

68. The misconduct described in this count was objectively unreasonable and undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**WHEREFORE**, Plaintiff Douglas Brown demands judgment against Defendants Palomino and Rainey for compensatory damages, punitive damages, costs, reasonable attorneys' fees, and such other and additional relief deemed equitable and just under the circumstances.

## Count III

### 42 U.S.C. § 1983 – Conspiracy to Deprive of Constitutional Rights
(Against Palomino and Rainey)

69. Each of the foregoing paragraphs are incorporated herein.

70. The Defendants, acting in concert with the informant, reached an agreement among themselves to deprive Plaintiff of his constitutional rights.

71. In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the unlawful pre-trial detention of Plaintiff in violation of the Fourth Amendment) by unlawful means (including, falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

72. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

73. The misconduct described herein was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

74. As a result of Defendants' misconduct described herein, Plaintiff was injured, including a loss of liberty due to his unlawful pre-trial detention, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

**WHEREFORE**, Plaintiff Douglas Brown demands judgment against Defendants Palomino and Rainey for compensatory damages, punitive damages, costs, reasonable attorneys' fees, and such other and additional relief deemed equitable and just under the circumstances.

### Count IV

### State Law Claim – Malicious Prosecution
(Against Palomino and Rainey)

75. Each of the foregoing paragraphs are incorporated herein.

76. Detectives Palomino and Rainey knew and informed the other that the information supplied by the informant was untrue, unreliable, and contrived.

77. The information gathered by Detectives Palomino and Rainey was false and the detectives knew it was false because they are pressured and led the informant to identify Plaintiff as being involved.

78. Detectives Palomino and Rainey then pressured another person to implicate Plaintiff.

79. The information obtained by Detectives Palomino and Rainey did not provide probable cause to arrest and prosecute Plaintiff because the information was created by the Defendants using duress.

80. The Defendants met at different times and locations and had discussions about how to recommend and pressure prosecutors to arrest and prosecute Plaintiff.

81. Defendants knew that prosecutors would rely on their investigation and the information they reported to prosecutors in moving forward with a prosecution and indictment.

82. Defendants provided misinformation about Plaintiff to encourage the prosecution of Plaintiff, and they concealed exculpatory evidence that Plaintiff was not involved.

83. Despite knowing the true facts, the Defendants recommended to the Cook County State's Attorney that Plaintiff be criminally prosecuted.

84. Defendants did not disclose or note the inconsistencies in the informant and Harvey's stories, or the objective falsities that existed with the narratives they were told to concoct.

85. As a result of Defendants' efforts to obtain criminal charges, Plaintiff was charged with multiple counts of murder, attempted murder, and aggravated discharge of a weapon.

86. The charges and any indictment of Plaintiff was based on the recommendation, information, and false evidence obtained Defendants, and resulted from the exculpatory evidence that the Defendants withheld.

87. Defendants provided or knowingly participated in the provision of false information to the Cook County State's Attorney to cause a wrongful prosecution of Plaintiff or concealed exculpatory evidence.

88. The Defendants caused a criminal prosecution to commence and/or continue against Plaintiff resulting in a trial in the Circuit Court of Cook County.

89. The Defendants, initiated, facilitated and/or continued this malicious prosecution by the creation of manufactured and fabricated evidence, including writing false police reports, preparing and signing false criminal complaints, conducting unduly prejudicial, misleading, suggestive and/or coercive physical interrogations, and/or otherwise wrongfully misrepresenting and/or withholding evidence.

90. The Defendants maliciously commenced and/or continued a criminal prosecution against Plaintiff without probable cause for the commencement and/or

obtained the continuation of those proceedings before the Cook County Circuit Court.

91. As a result, Plaintiff was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

92. The criminal proceedings were terminated in Plaintiff's favor on November 30, 2018 when the jury found Plaintiff not guilty in a manner indicative of his actual innocence of the crimes charged.

**WHEREFORE**, Plaintiff Douglas Brown demands judgment against Defendants Palomino and Rainey for compensatory damages, punitive damages, costs, reasonable attorneys' fees, and such other and additional relief deemed equitable and just under the circumstances.

## Count V

### State Law Claim – Civil Conspiracy
(Against Palomino and Rainey)

93. Each of the foregoing paragraphs are incorporated herein.

94. As described more fully in the preceding paragraphs, the Defendants reached an agreement among themselves and with others, including with the informant, to violate the law and deprive Plaintiff of his rights.

95. Each of the Defendants, acting in concert with other co-conspirators, including the informant, reached an agreement among themselves to deprive Plaintiff of his constitutional rights.

96. In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the false conviction of Plaintiff) by unlawful means (including, falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

97. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

98. The misconduct described herein was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

**WHEREFORE**, Plaintiff Douglas Brown demands judgment against Defendants Palomino and Rainey for compensatory damages, punitive damages, costs, reasonable attorneys' fees, and such other and additional relief deemed equitable and just under the circumstances.

### Count VI

### State Law Claim – Willful & Wanton Conduct
(Against Palomino and Rainey)

99. Each of the foregoing paragraphs are incorporated herein.

100. In the manner described more fully above, the actions of Defendants breached the duty of care owed to Plaintiff.

101. The actions of the Defendants were willful and wanton in that they demonstrated an utter indifference for the safety and well-being other others.

102. In addition, and/or alternatively, the Defendants were conscious that an injury could result from the above-described course of action and recklessly disregarded the consequences of those actions.

103. The misconduct described herein was undertaken with intentional disregard for Plaintiff's rights.

104. As a result of the Defendants' misconduct described herein, Plaintiff experienced and continues to experience pain, suffering and distress

**WHEREFORE**, Plaintiff Douglas Brown demands judgment against Defendants Palomino and Rainey for compensatory damages, punitive damages, costs, reasonable attorneys' fees, and such other and additional relief deemed equitable and just under the circumstances.

### Count VII

### State Law Claim – *Respondeat Superior*
(Against City of Chicago)

105. Each of the foregoing paragraphs are incorporated herein.

106. In committing the acts alleged in this Complaint, the Detectives Palomino and Rainey were employees, members, and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

107. Defendant City of Chicago is liable as principal for all torts committed by its agents.

108. In the event that a jury finds that either Detective Palomino or Detective Rainey or any unknown and/or unnamed employee or agent of the Defendant City of Chicago committed any unlawful acts upon which Plaintiff's

Complaint is premised under state law, then Defendant City of Chicago is liable for the acts of that employee or agent.

**WHEREFORE**, Plaintiff Douglas Brown demands that the City of Chicago be held liable for any acts of its employees resulting in compensatory damages, costs, and such other and additional relief deemed equitable and just under the circumstances.

## Count VIII

### State Law Claim – Indemnification
(Against City of Chicago)

109. Each of the foregoing paragraphs are incorporated herein.

110. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102.

111. Detectives Palomino and Rainey are, or were, employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described above.

112. Defendant City of Chicago is obligated to pay any judgment for compensatory damages entered against Detectives Palomino and Rainey, or any other agent or employee liable for the misconduct described herein.

**WHEREFORE**, in the event that a judgment for compensatory damages is entered against Detectives Palomino and Rainey or any other agent or employee, Plaintiff prays that a judgment be entered against Defendant City of Chicago

requiring payment of any such judgment and the associated attorneys' fees and costs.

## **JURY DEMAND**

Plaintiff Douglas Brown hereby demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38, on all issues so triable.

**PLAINTIFF DOUGLAS BROWN,**

By: /s/Christopher Carmichael
One of his Attorneys

Victor P. Henderson
Christopher W. Carmichael
**THE COCHRAN FIRM - CHICAGO**
140 S. Dearborn St., Suite 1020
Chicago, Illinois 60603
Tel.: (312) 262-2880
vphenderson@cochranfirm.com
ccarmichael@cochranfirm.com